UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
SARAH LAMONT TAYLOR,            :
                                :
            Plaintiff,          :
                                :      Case no. 2:09-cv-297
        v.                      :
                                :
THE STRATTON CORPORATION        :
d/b/a, STRATTON MOUNTAIN        :
RESORT, and INTRAWEST, ULC      :
                                :
            Defendants.         :
```

### Memorandum and Order
### Defendant Intrawest, ULC's Motion for Summary Judgment

Defendant Intrawest, ULC ("Intrawest") previously filed a Motion to Dismiss, arguing Plaintiff Sarah Lamont Taylor ("Taylor") had failed to link Intrawest to the injuries she suffered while skiing at Stratton Mountain Resort ("Stratton") on January 6, 2009.[1]  Def.'s Mot. to Dismiss, May 4, 2010, ECF No. 13.  Specifically, it had argued Taylor's complaint failed to allege Intrawest had management responsibilities at Stratton.  Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss, June 15, 2010, ECF No. 17.  The Court denied the motion, suggesting the parties could explore Intrawest's relationship to Stratton during discovery.  Mem. and Order 5, 7.  After discovery, Intrawest

---

[1] The Court addressed the factual background in its Memorandum and Order on Intrawest's Motion to Dismiss, July 9, 2010, ECF No. 18, familiarity with which is assumed.

filed its Motion for Summary Judgment, Sept. 27, 2011, ECF No. 44, which is presently before the Court.  In it, Intrawest reasserts the argument that it had merely a parent-subsidiary relationship with Stratton Corporation, that it had limited management or supervisory responsibilities over operations at Stratton, and that, as a result, it does not belong in this case.  *Id.*; Def.'s Reply to Pl.'s Opp'n to Mot. for Summ. J., Nov. 28, 2011, ECF No. 50.

The character of Intrawest's relationship with Stratton Corporation is clearly contested.  Intrawest relies on deposition testimony from Stratton employees who were aware of only a limited oversight role by Intrawest, such as managing employee benefits and reviewing contracts.  *See* Mot. for Summ. J. Att. 1 (Statement of Undisputed Material Facts), at 1-2, ECF No. 44-1; *Id.* Exs. 1-4, 6, ECF Nos. 44-2 – 44-5, 44-8.  It also points out that Stratton's name and address appear on employee earnings statements and paychecks.  Mot. for Summ. J. Ex. 5, ECF Nos. 44-6 – 44-7.  Finally, it notes that Taylor's safety expert agreed in his deposition with the statement that "[t]here's nobody or no thing that's responsible for Sarah's incident other than Stratton."  Mot. for Summ. J. Ex. 7, at 5, ECF No. 44-9.

On the other hand, as of 2003, Intrawest had a 100 percent equity interest in Stratton Corporation.  Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. 1, at 7, Nov. 2, 2011, ECF No. 47-2.

Additionally, Taylor argues that Intrawest does not merely own Stratton, but also manages and controls it.  Pl.'s Opp'n 7-9, ECF No. 47.  She provides evidence that Intrawest held itself out both to the Securities and Exchange Commission ("SEC") and to the public as an operator or manager of its ski resorts.  Pl.'s Opp'n Ex. 1, at 6, Ex. 2, at 1, ECF Nos. 47-2 - 47-3.  The President and COO of Stratton, Sky Foulkes, was listed on Intrawest's website as a member of "[t]he Intrawest Resort Operations Leadership Team."  Pl.'s Opp'n Ex. 6, at 2.  He was "responsible for the long-term vision of the resort, as well as the day-to-day management and operations," and had recently served in a leadership role at another ski area owned by Intrawest, Mountain Creek in New Jersey.  Pl.'s Opp'n Ex. 6, at 3.

Intrawest also advertises job placements at its resorts, including openings at Stratton, on its website.  Pl.'s Opp'n Ex. 7, ECF No. 47-8.  It appears to be involved in public relations and marketing for its various resorts, such as when, in 2008, it publicized favorable early season snow conditions at its East Coast ski areas.  Pl.'s Opp'n Ex. 8, ECF No. 47-9.  It represented in SEC filings that it maintains liability insurance for incidents at its resorts.  Pl.'s Opp'n Ex. 9, at 9, ECF No. 47-10.

Taylor also presents evidence that Stratton's employees work for Intrawest, meaning the principle of *respondeat superior* could render Intrawest liable for their negligent acts. Pl.'s Opp'n 9-10. *See Doe v. Forrest*, 853 A.2d 48, 54 (Vt. 2004). Intrawest indicated in SEC filings it had approximately 10,300 year-round employees and 14,500 additional peak-season employees. Pl.'s Opp'n Ex 3, at 23, ECF No. 47-4. Intrawest's website describes its Senior Vice President, Mara Pagotto, as in charge of "all aspects of Human Resources and Employee Experience for Intrawest's 22,000 employees worldwide." Pl.'s Opp'n Ex. 6, at 3, ECF No. 47-7. In a deposition, Stratton's assistant ski patrol director testified that he believed his paychecks and benefits come from Colorado, where Intrawest is located. Pl.'s Opp'n Ex. 5, at 4, ECF No. 47-6.

Intrawest argues that Taylor failed to dispute several of the facts on which it relies. Def.'s Reply 4-5. That, however, is not her burden in defending against a motion for summary judgment. Taylor has adequately shown there is a dispute over the material fact of Intrawest's control over Stratton, and therefore Intrawest's motion for summary judgment is denied.

Dated at Burlington, in the District of Vermont, this 30th day of November, 2011.

/s/William K. Sessions III  
William K. Sessions III  
U.S. District Court Judge